UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:22-CV-61-TBR

**LYNDON D. BOONE,**                                                                                                      **PLAINTIFF**

v.

**LLOYD J. AUSTIN III,**
**SECRETARY, DEPARTMENT OF DEFENSE,**                                                            **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Partial Judgment on the Pleadings filed by Defendant Lloyd J. Austin III. [DN 16]. In response, Plaintiff filed objections, [DN 17], which this Court views as a response under Local Rule 7.1, and Defendant replied, [DN 18]. Plaintiff then filed "Plaintiff's Reclama to Defendant's Reply," [DN 19], which this Court views as an improperly filed sur-reply, as discussed below. This matter is therefore fully briefed and ripe for review. For the reasons set forth herein, the Court will grant Defendant's Motion for Partial Judgment on the Pleadings, [DN 16], which the Court now construes as a motion seeking partial summary judgment, as explained below.

**I.      BACKGROUND**

Plaintiff's Complaint, [DN 1], alleges the following facts. Plaintiff, an African American male, was employed by the United States Department of Defense Commissary Agency ("DeCA"). *Id.* at 1. DeCA operates a worldwide chain of commissaries, providing groceries to military personnel, retirees, and their families. *Id.* Plaintiff served as an Assistant Commissary

1

Officer with DeCA. *Id.* His employment began on January 19, 1999, and he remained employed with DeCA until his termination on December 18, 2020. *Id.* at 2.

Plaintiff appealed his termination to the United States Merit Systems Protection Board ("MSPB") on January 14, 2021. *Id.* He argued that the did not commit the offenses alleged, which included sexual harassment, and further argued that his termination violated the Civil Rights Act of 1964. *Id.* On November 8, 2021, the MSPB issued an Initial Decision, ruling against Plaintiff on both claims. *Id.* That decision became final on December 13, 2021. *Id.*

On January 11, 2022, Plaintiff filed this suit against the Defendant, seeking judicial review of the MSPB's findings. *Id.* He argues that the agency (presumably referring to DeCA) failed to meet its burden of proof; the MSPB applied the incorrect legal standard to the allegations of sexual harassment; the agency brought stale and meritless charges; the accusations against him were unlawfully motived by discriminatory animus, bias, and/or retaliatory motive; and Defendant and the MSPB failed to consider substantial exculpatory evidence. *Id.* at 3. He also alleges that certain closed-circuit video surveillance footage was destroyed or otherwise not preserved. *Id.* at 4. He seeks payment for "lost wages, salary, employment benefits, or other compensation denied or lost." *Id.*

Defendant has now filed this Motion for Partial Judgment on the Pleadings, [DN 16], seeking judgment in his favor with respect to Plaintiff's racial discrimination claim. Plaintiff responded, [DN 17], and Defendant replied, [DN 18]. And, as discussed below, Plaintiff attempted to file a sur-reply, without leave to do so. This matter is therefore fully briefed and ripe for review.

## II.    LEGAL STANDARD

### A.  Motion for Judgment on the Pleadings or Motion for Summary Judgment

Defendant has filed a Motion for Partial Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). In his brief, he recites the standard for Rule 12(c), but also notes that his motion "can be converted to one for summary judgment under Rule 56" and further argues that "[t]he result should be the same." [DN 16, p. 4 n.3]. In Plaintiff's response brief, Plaintiff cites only to the standard for summary judgment under Federal Rule of Civil Procedure 56. *See* [DN 17, pp. 2–3].

The distinction between a motion for judgment on the pleadings and a motion for summary judgment is an important one. The standard for reviewing a Rule 12(c) motion mirrors the standard for reviewing a Rule 12(b)(6) motion to dismiss. In fact, "[t]he primary distinction between a motion to dismiss for failure to state a claim [under Rule 12(b)(6)] and a motion for judgment on the pleadings [under Rule 12(c)] is one of timing." *In re Brizinova*, 592 B.R. 442 (E.D. N.Y. 2018). Accordingly, to survive a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 296 (6th Cir. 2008) (explaining standard for a Rule 12(c) motion). In assessing the pleadings on such a motion, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). If the pleadings, accepted as true, present "no material issue of fact . . . and the party making the motion is entitled to judgment as a matter of law," then it is appropriate to

grant the Rule 12(c) motion. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citing *Winget*, 510 F.3d at 582) (internal citation marks omitted).

On the other hand, to grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In doing so, the Court looks beyond the pleadings and must review the evidence in the light most favorable to the non-moving party; however, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

The Court will consider the pending motion as one for partial summary judgment under Rule 56. As noted above, Defendant argues in his initial motion that it may properly be considered under Rule 56. Plaintiff's response also goes well beyond the pleadings in this case, and Plaintiff cites only to the standard for summary judgment under Rule 56. The Court therefore understands that both parties agree that this motion may be considered under Rule 56, and no additional notice or briefing is necessary.

### B. Judicial Review under 5 U.S.C. § 7703

The underlying complaint in this case seeks judicial review of the MSPB's decision. *See* [DN 1]. Under 5 U.S.C. § 7703, "[a]any employee or applicant for employment adversely

4

affected or aggrieved by a final order or decision of the [MSPB] may obtain judicial review of the order or decision." *Id.* § 7703(a)(1). Generally, the United States Court of Appeals for the Federal Circuit has exclusive jurisdiction to consider appeals from MSPB final orders and decisions. *Id.* § 7703(b)(1)(A). However, if the appeal is "mixed"—meaning it seeks review of the MSPB decision on a non-discriminatory claim but also includes a claim of discrimination— the appealing party may seek review in a federal district court. *See Riehle v. Stone*, No. 94-1649, 1994 WL 659156, *1 (6th Cir. Nov. 22, 1994).

In such cases, the district court's role is two-fold. *Kirkland v. Runyon*, 876 F.Supp. 941, 944 (S.D. Ohio 1995). For the non-discriminatory claims, the Court's inquiry is limited to considering whether the MSPB's findings are:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

*Id.* (citing *Riehle*, 1994 WL 659156, at *2); *see also* 5 U.S.C. § 7703(c). For discrimination claims (such as race discrimination), "the Court need not defer to the MSPB, and must undertake, on a *de novo* basis and under § 7703(c), the disparate treatment analysis common to Title VII employment discrimination claims." *Kirkland*, 876 F.Supp. at 944 (citation omitted).

### III. ANALYSIS

#### A. Plaintiff's "Reclama"

As previously noted, Plaintiff filed a "Reclama," [DN 19], in response to Defendant's reply brief, [DN 18]. Though nonsensically labeled as a "Reclama," the filing is in fact a sur-reply. However, the local rules do not allow parties to file sur-replies as a matter of right; rather,

5

parties may do so only after seeking leave of court. Typically, a court grants leave only under appropriate circumstances, such as "[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated." *Key v. Shelby County*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)) (internal quotation marks omitted).

In this case, Plaintiff did not seek leave of court to file his sur-reply, and the reply brief, [DN 18], did not present new evidence or arguments that necessitated the filing of a sur-reply. Further, having reviewed the filings in this matter, the Court does not believe that a sur-reply is necessary to resolution of the underlying Motion for Partial Judgment on the Pleadings, now construed as a motion seeking partial summary judgment. In fact, much of Plaintiff's response brief and "reclama" focus on issues that are irrelevant to the underlying issue in the pending motion, namely, whether Plaintiff can prove an essential element of his prima facie case of racial discrimination. Accordingly, the Court will order that Plaintiff's "Reclama," which the Court construes as an improperly filed sur-reply, be stricken from the record.

### B. Defendant's Motion

In the present case, Plaintiff seeks judicial review of the MSPB's final decision, in which the MSPB rule against Plaintiff to the extent he (1) challenged his termination and argued that he was innocent of the alleged misconduct and (2) he argued that his termination was discriminatory in violation of the Civil Rights Act. The Court therefore understands that, pursuant to 5 U.S.C. § 7703, Plaintiff asks this Court to review the MSPB's decision regarding his misconduct and to conduct a de novo review relating to his racial discrimination claim. Defendant now moves the Court for a judgment on the pleadings with respect to the racial discrimination claim.

As noted above, when a district court reviews a "mixed" MSPB appeal, it need not defer to the MSPB when considering the plaintiff's discrimination claims. *Kirkland*, 876 F.Supp. at 944 (citation omitted). Instead, the Court "must undertake, on a *de novo* basis and under § 7703(c), the disparate treatment analysis common to Title VII employment discrimination claims." *Id.* (citation omitted). Thus, when considering Plaintiff's claims of intentional discrimination based on circumstantial evidence, the Court turns to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the *McDonnell Douglas* framework, Plaintiff must first establish a prima facie case of race discrimination. *See, e.g.*, *Wright*, 455 F.3d at 706. If he does so, "Defendants must then articulate a legitimate, nondiscriminatory reason for their employment decision." *Id.* If Defendants articulate such a reason, "any presumption of discrimination . . . drops from the case, and Plaintiff must prove by a preponderance of the evidence that Defendant['s] stated reason was pretextual." *Id.* at 706–07. Throughout this framework, the burden of production shifts; however, "the ultimate burden of persuading the trier of fact that Defendant[] intentionally discriminated or retaliated against Plaintiff remains at all times with Plaintiff." *Id.* at 707.

Thus, under the disparate treatment analysis common to Title VII discrimination claims, the Court must first consider whether Plaintiff has sufficiently alleged a prima facie case of racial discrimination. To do so, a plaintiff must show "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Id.* As the Sixth Circuit has explained, "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action

under circumstances which give rise to an inference of unlawful discrimination." *Crayton*, 213 F. Supp. 3d at 979 (quoting *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007), *abrogated on other ground by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 313 (6th Cir. 2012)) (internal quotation marks omitted).

In this case, Defendant argues that Plaintiff has failed to sufficiently allege the fourth element of a prima facie case of employment discrimination: whether Plaintiff "was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Wright*, 455 F.3d at 707. In his complaint, Plaintiff alleges that he was "singled-out" and punished more harshly for "conduct nearly identical to conduct brought to the attention of Caucasian (white) supervisors, which was ignored." [DN 1, ¶ 21]. Defendant explains, however, that Plaintiff, a black male, was terminated for sexually harassing other employees, while the allegedly similarly situated white supervisors were disciplined for negligently failing to report claims of sexual harassment. *See* [DN 16]. Because the underlying misconduct is not the same, Defendant argues, these white supervisors were not "similarly situated." *Id.*

In response, Plaintiff only briefly addresses this element of his discrimination claim. [DN 17, pp. 3–4]. Instead, Plaintiff spends the bulk of his response arguing his innocence and alleging various facts (without citing to any evidence of record) that he argues are indicative of discriminatory motive and pretext. But the only issue raised in Defendant's motion is the sufficiency of Plaintiff's allegations with respect to the fourth element of his prima facie case. With respect to that issue, Plaintiff argues only that the standard for comparing the alleged misconduct of the white supervisors to his own alleged misconduct is one of "comparable seriousness." *Id.* at 3–4. Thus, he apparently argues that the commission of sexual harassment is

comparable in seriousness to the failure to report such harassment, though he cites to no case law in support of this contention.

As an initial matter, the Court notes that Plaintiff's arguments relating to pretext are irrelevant at this stage of the discrimination analysis. The Court would consider the issue of pretext only after first finding that the Plaintiff satisfied his prima facie case, and then further considering whether the employer had articulated a legitimate and non-discriminatory reason for Plaintiff's termination. Plaintiff's arguments relating to his innocence are also irrelevant at this stage. The question before the Court at this time is not whether Plaintiff is guilty of sexually harassing other employees. Rather, the issue before the Court is simple: has Plaintiff sufficiently demonstrated that he was treated differently than similarly situated employees outside of his protected class for the same or similar conduct? More specifically, is Plaintiff, who was terminated for sexual harassment, "similarly situated" to white supervisors who were disciplined less harshly for failing to properly report sexual harassment?

The Sixth Circuit has provided guidance on this issue. That Court has explained that, in order for a plaintiff to show that he was treated differently than similarly situated colleagues for the same or similar conduct, he "must show that 'all relevant aspects' of [his] employment situation are 'nearly identical' to those of the alleged similarly situated [white] employees." *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (quoting *Jacklyn v. Schering– Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 929 (6th Cir.1999)). Further,

> to be deemed "similarly situated," the individuals with whom [the plaintiff] compares [him]self "'must have dealt with the same supervisor, have been subject to the same standards, *and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it*.'"

*Id.* (quoting *Gray v. Toshiba Am. Consumer Products, Inc.,* 263 F.3d 595, 599 (6th Cir. 2001)) (emphasis added). If the plaintiff's conduct was sufficiently similar to his comparators' conduct,

9

but the employer disciplined the plaintiff differently than the comparators, one may infer discriminatory motive. *See Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 777 (6th Cir. 2016).

However, a plaintiff "is not required to show that his proposed comparator's actions were identical to his own." *Id.* (quoting *Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 459 (6th Cir 2010)). Rather, the Court must "look to whether the comparators' actions 'were of comparable seriousness to the conduct for which Plaintiff was discharged.'" *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)) (internal quotation marks omitted). With respect to this "comparable seriousness" evaluation, the Sixth Circuit has provided the following guidance:

> When it comes to comparable seriousness, it is the particular conduct of the [employees], not broad generalizations, that counts. Drawn at too high a level of generality, the "comparable seriousness" test becomes meaningless. True, stitches and open-heart surgery are both medical procedures. But that does not mean they are of "comparable seriousness."

*Johnson v. Ohio Dept. of Public Safety*, 942 F.3d 329, 331 (6th Cir. 2019).

In the present case, Plaintiff has failed to cite to any evidence of record (or even outside the record) that would indicate that the white supervisors at issue "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Humenny*, 390 F.3d at 906 (citation omitted). He compares his circumstances—i.e., being terminated for intentionally sexually harassing several female employees—with those of white supervisors who negligently failed to report sexual harassment. True, the conduct of those white supervisors also involved sexual harassment, but to categorize the conduct so broadly would render the "comparable seriousness" test meaningless. *See Johnson*, 942 F.3d at 331. Instead, the Court must identify the specific conduct at issue. For

Plaintiff, it was his allegedly intentional acts of sexual harassment aimed at several female employees. For the comparators, it was the negligent failure to report claims that employees had been sexually harassed by other employees (not the white supervisors themselves). The Court cannot find that such disparate conduct was comparable in seriousness.

Plaintiff does not explain why he believes that his alleged misconduct is of comparable seriousness to the misconduct of the white supervisors. Rather, Plaintiff argues that he "sought written discovery on [this] exact type of comparative information," but was denied access to internal reports regarding similarly situated supervisors (or managers) who had been accused of sexual harassment. [DN 17, p. 4]. He notes that Defendant ultimately provided affidavits from Equal Employment Office ("EEO") officials stating that no such records existed. *Id.* He seems to suggest—without any support whatsoever—that the agency is hiding these records. Such rampant speculation, completely unsupported by the record or any other evidence, is not sufficient to withstand a motion for summary judgment. *See Hunter v. Shield*, 550 F. Supp. 3d 500, 525 (S.D. Ohio 2021) ("Speculation 'will not suffice to defeat a motion for summary judgment.'" (quoting *Griffin v. Jones*, 170 F. Supp. 3d 956, 963 (W.D. Ky. 2016))). Furthermore, the inference suggested by Plaintiff is, at best, strained. The obvious inference to the lack of such records is that no other similarly situated managers have been accused of such sexual harassment. *See Fox v. Amazon.com, Inc.*, 930 F.3d 415, 425 (6th Cir. 2019) ("[S]ummary judgment 'does not allow, much less require that we draw strained and unreasonable inferences in favor of the nonmovant.'" (quoting *Audi AG v. D'Amato*, 469 F.3d 534, 545 (6th Cir. 2006))). Lastly, the Court also notes that, despite Plaintiff's arguments that comparator information is being withheld from him, he has specifically argued that he was treated differently than the white supervisors noted above.

In sum, the Court finds that Plaintiff has failed to demonstrate an essential element of his prima facie case of racial discrimination, namely, that he was treated differently than similarly situated employees outside of the protected class. Because he has failed to prove this essential element, the Court will grant summary judgment in favor of Defendant on this claim.

### IV.   CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Defendant's Motion for Partial Judgment on the Pleadings, [**DN 16**], now construed as a Motion for Partial Summary Judgment, is **GRANTED**.  A separate judgment shall issue.

**IT IS FURTHER ORDERED** that Plaintiff's "Reclama," [**DN 19**], which the Court construes as an improperly filed sur-reply, be **STRICKEN** from the record.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

August 23, 2022

cc: Counsel of Record