UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

LYNDON D. BOONE,                              )
                                             )
        Plaintiff,                           )        Civil Action No. 5:22-CV-061-CHB
                                             )
v.                                           )
                                             )        **MEMORANDUM OPINION**
LLOYD J. AUSTIN, III,                        )        **AND ORDER**
*Secretary, United States Department*        )
*of Defense*,                                )
                                             )
        Defendant.                           )

***   ***   ***   ***

This matter is before the Court on Plaintiff Lyndon D. Boone's Brief in Support of Appeal, [R. 38], and the Motion in Support of Affirming the Merit Systems Protection Board's Decision by Defendant Lloyd J. Austin, III, the Secretary of the United States Department of Defense, [R. 39]. The matter has been fully briefed and stands submitted for review. *See* [R. 40]; [R. 41]; [R. 42]. For the following reasons, the Secretary's Motion [R. 39] will be **GRANTED**.

## I.    Background

Through this action, Boone appeals the final decision of the U.S. Merit Systems Protection Board ("the Board" or "MSPB"), which held that the Defense Commissary Agency ("DeCA") lawfully terminated him. *See* [R. 1]; *see also* [R. 8, p. 1]. DeCA operates a worldwide chain of commissaries providing groceries to miliary personnel, retirees, and their families. *See* [R. 1, ¶ 3]. Boone was employed by DeCA in various positions for roughly twenty years before he was terminated on December 18, 2020. *See id.* at ¶ 6. Most recently before his termination, Boone

- 1 -

served as an assistant commissary officer at the Fort Campbell (Kentucky) Commissary.  *See id.* at ¶ 2; *see also* [AR, p. 13].[1]

In 2019, allegations of sexual harassment by Boone came to light, and in September of that year, he was placed on administrative leave.  *See* [AR, p. 762] (discussing timeline of case).  On July 20, 2020, DeCA issued an initial proposal to remove Boone, which was based on such harassment allegations.  *See id.* at 348 (First Notice of Proposed Removal); *see also id.* at 820–21 (Board Decision).  Boone responded to that proposal in August 2020; the agency rescinded the proposal in late October 2020 and issued a revised proposal on November 3, 2020.  *See id.* at 821; *see also id.* at 337.  The revised proposal included two charges: (1) violation of DeCA's policy on sexual harassment; and (2) failure to follow instructions.  *See id.* at 13–20 (Second Notice of Proposed Removal).

The first charge was based on seven specifications, or instances, of alleged sexual harassment by Boone following a formal investigation at the Fort Campbell Commissary from December 2, 2019, to January 28, 2020.[2]  *See id.* at 13–14; *Erb v. Dep't of Treasury*, No. 2021-1756, 2024 WL 1110340, at *2 n.1 (Fed. Cir. Jan. 24, 2024) ("Each independent 'specification' constitutes a separate act or event that supports a charge.") (internal citations omitted).  For each of these specifications, the Notice of Proposed Removal found Boone's sexual contact (and attempted sexual contact), sexual gestures, and/or sexual comments directed toward coworkers were offensive and unwelcomed and constituted a violation of DeCA's Policy DP 500-14, Anti-Harassment and Prevention of Sexual Harassment.  *See* [AR, pp. 13–14].

---

[1] Citations to the administrative record refer to records located at R. 26-1.

[2] The investigation had been conducted by DeCA Investigator Andrew Falk.  *See generally* [AR, pp. 820–21].

Specification 1 regarded findings that between August 2019 and September 2019, Store Worker Beonca Cooksey left Boone's office at the Fort Campbell Commissary, and Boone hit her on her butt and said, "excuse me" (or words to that effect).  *See id.* at 13.

Specification 2 regarded findings that around September 7, 2019, while Cooksey was performing her duties, Boone called the DSD phone (a receiving phone line located at the warehouse) and asked Cooksey, "Are you thinking about coming over since my wife is gone because now is the time" (or words to that effect).  *See id.*

Specification 3 regarded findings that between 2017 and August 2019, Boone told Assistant Grocery Manager Jacqueline L. Minor, prior to leaving work for the day, "I need some" (or words to that effect).  *See id.*

Specification 4 regarded findings that between 2017 and August 2019, Boone and Minor were exiting the duty manager's office at the commissary and Boone asked Minor to "go ahead" (or words to that effect), and Boone touched Minor's breasts with his hand as she left the office. *See id.*  Boone then proceeded to look out of the office, turned around, and touched Minor's breasts again with his hand.  *See id.* at 13–14.

Specification 5 regarded findings that around July 9, 2019, Store Worker Melinda Sanchez told Boone that she was having a reaction to an insect bite.  *See id.* at 14.  Boone responded to Sanchez, "I was bitten too.  Do you want to see it?" (or words to that effect).  *See id.*  Boone then proceeded to reach down to the front of his pants and point at his crotch.  *See id.*

Specification 6 regarded findings that between September 2017 and May 2019, Boone asked Computer Assisted Order Technician Carolina Pezzella-Hopping[3] to go upstairs with him to the main floor of the commissary.  *See id.*  Boone was walking in front of Pezzella-Hopping,

---

[3] This individual's name is spelled several different ways in the record.  The Court uses the spelling that appears in her affidavit.  *See* [AR, p. 175].

and as the door closed, Boone turned around and tried to kiss her. *See id.* Pezzella-Hopping rejected Boone by turning her body away from Boone's and went back to the commissary's main floor. *See id.* Afterward, Boone approached Pezzella-Hopping and stated, "What happened is between you and me" (or words to that effect). *See id.*

Specification 7 regarded findings that between September 2017 and May 2019, Pezzella-Hopping was in the performance of her duties and on her knees stocking the bottom shelves of the rice and coffee aisle. *See id.* When Pezzella-Hopping attempted to stand up, Boone said, "No, stay right there, you are in the right possession right there" (or words to that effect). *See id.* Pezzella-Hopping proceeded to stand up and leave the area. *See id.*

Similarly, the second charge was based on four specifications, or instances, in which Boone was alleged to have failed to follow instructions. These specifications were based on the same investigation as those under the first charge. *See id.* at 14–15. Each of these specifications allege that Boone failed to follow instructions when he violated DP 500-14, Anti-Harassment and Prevention of Sexual Harassment, which states that supervisors and managers are responsible for maintaining a harassment-free work environment for all employees. *Id.*

Here, Specification 1 regarded findings that between August 2019 and September 2019, Boone failed to follow instructions when he violated policy by creating a work environment that was harassing, intimidating, and offensive toward Cooksey. *See id.* at 14.

Specification 2 regarded findings that between 2017 and August 2019, Boone failed to follow instructions when he violated policy by creating a work environment that was harassing, intimidating, and offensive toward Minor. *See id.* at 14–15.

Specification 3 regarded findings that around July 9, 2019, Boone failed to follow instructions when he violated policy by creating a work environment that was harassing, intimidating, and offensive toward Sanchez. *See id.* at 15.

And Specification 4 regarded findings that between September 2017 to May 2019, Boone failed to follow instructions when he violated policy by creating a work environment that was harassing, intimidating, and offensive toward Pezzella-Hopping. *See id.*

The Notice of Removal was signed by Charles Shropshire, the commissary director.[4] *See id.* at 20. Boone replied to the Notice of Proposed Removal, and Area Director Ronald A. Yoder considered Boone's reply and all the information that formed the basis for the agency's action. *See id.* at 21–24; *see also id.* 301–03 (Yoder's *Douglas* Factors Checklist). In a written decision issued December 15, 2020, Yoder found the charges against Boone were supported by the evidence, were sustained, and warranted Boone's removal. *See id.* at 21. The decision to remove Boone became effective three days later on December 18, 2020. *See id.* ("Therefore, it is my decision that you be removed, effective December 18, 2020. This action is necessary for such cause as will promote efficiency of the service.").

On January 14, 2021, Boone appealed his termination to the MSPB. *See* [R. 1 (Complaint), ¶ 10]; *see also* [AR, p. 2] (listing Boone's initial appeal as being received on January 14, 2021). Boone's appeal to the Board alleged that he did not commit the offenses charged (challenging the decision under the Civil Service Reform Act ("CSRA")) and alleged that the agency's decision was unlawfully motivated due to discrimination (challenging the decision under Title VII); he thus

---

[4] The record also contains Shropshire's "Douglas Factors Checklist for Proposing Officials," dated April 29, 2020, in which Shropshire determined the various factors supported the proposed action of removal. *See* [AR, pp. 125–27]. The *Douglas* factors are "twelve non-exhaustive factors an agency may use to determine the appropriateness of a penalty." *See Erb*, 2024 WL 1110340, at *5 (referencing *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280 (M.S.P.B. 1981)).

presented a "mixed case."  *See* [R. 1, ¶ 12]; *see Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 422 (2017) ("In the CSRA, Congress created the Merit Systems Protection Board (MSPB or Board) to review certain serious personnel actions against federal employees."); *see also Perry*, 582 U.S. at 422 (defining "mixed case" as "when a federal employee complains of a serious adverse employment action taken against him . . . and attributes the action, in whole or in part, to bias based on race, gender, age, or disability, in violation of federal antidiscrimination laws").

On November 8, 2021, an Administrative Judge (AJ) for the Board issued an "Initial Decision" and ruled against Boone on both claims.  *See* [AR, pp. 819–57].  The AJ issued the decision without holding a hearing, as Boone had withdrawn his request for one.  *See id.* at 821; *see also id.* 682 (explaining that Boone had withdrawn his request for a hearing, so the AJ would "decide the case based on the written records").

In the decision, the AJ first provided an overview of the background surrounding Boone's termination and how the allegations of sexual harassment against him came to light.  *See id.* at 820–21.  The AJ then found DeCA had met its burden of proving the charge of violation of DeCA's policy on sexual harassment.[5]  *See id.* at 823.  In doing so, the AJ noted that "[t]he parties have stipulated that the Title VII standard for 'sexual harassment' is the applicable standard to the charge in this case."  *See id.* (citing stipulations); *see also id.* at 695 ("Agency:  Title VII standards and burden of proof apply.  Appellant:  Agreed.").  The AJ further found Boone had violated the agency's policy on sexual harassment with regard to Specifications 1, 2, 6, and 7.  *See id.* at 825. However, the AJ found that DeCA had not meet its burden of establishing that Boone's conduct, as described in Specifications 3, 4, and 5 violated the agency's policy on sexual harassment.  *See*

---

[5] The AJ had previously found that the two charges merged.  *See* [AR, p. 823 n.3].  Therefore, the AJ considered only "whether the agency ha[d] met its burden of proving the specifications set forth under the first charge, Violation of DeCA's Policy on Sexual Harassment."  *Id.*

*id.* at 829–32.  Specifically, the AJ found the allegations under Specifications 3, 4, and 5 were substantiated but that they did not rise to the level of creating an environment that was hostile, abusive, or intimidating.  *See id.* at 830–32.

The AJ also considered Boone's three affirmative defenses presented in the appeal regarding (1) laches, (2) discrimination based on his race, and (3) harmful procedural error.  *See id.* at 836.  The AJ ultimately concluded that Boone had failed to prove each of these affirmative defenses by a preponderance of the evidence.  *See id.* at 836–45.

The AJ next found DeCA had demonstrated a nexus between Boone's conduct and the efficiency of the service.  *See id.* at 844 ("The nexus requirement, for purposes of determining whether an agency has shown that its action promotes the efficiency of the service, means there must be a clear and direct relationship between the articulated grounds for an adverse action and either the appellant's ability to accomplish his duties satisfactorily or some other legitimate government interest.").  Finally, the AJ considered the factors offered by Yoder (the DeCA official who terminated Boone's employment) as to why removal was the proper penalty and found that reasoning sufficient.  *See id.* at 845–48.

The AJ therefore affirmed DeCA's decision to terminate Boone's employment.  *See id.* at 848.  The initial decision became the final decision of the Board on December 13, 2021; Boone did not petition the Board for review of the AJ's decision.  *See* [R. 1, ¶ 13]; *see also* [AR, p. 848].  Because Boone's appeal challenging DeCA's decision was a mixed case (*i.e.*, it alleged violations of both the CSRA and Title VII), he was able to file suit in a federal district court challenging that decision.  *See Perry*, 582 U.S. at 423 ("If the MSPB dismisses a mixed case on the merits, . . . review authority lies in district court, not in the Federal Circuit.").

On January 11, 2022, Boone filed a Complaint challenging the Board's decision in the Eastern District of Virginia, suing Austin (as Secretary of the Army). *See* [R. 1]; *see also* [R. 8]. Through his Complaint, Boone sought "judicial review of the MSPB's findings in federal district court and challenge[d] all rulings of the MSPB as being contrary to law and not supported by substantial evidence," and he challenged the MSPB's decision on his discrimination claim under Title VII. *See* [R. 1, ¶¶ 14, 21]. On May 13, 2022, the Eastern District of Virginia transferred the action to this District, having determined that venue was proper here. *See* [R. 8].

After the case was transferred to this District, the prior judge assigned to this action granted the Secretary's motion for partial summary judgment on Boone's discrimination claim. *See* [R. 20]. Specifically, the Court found Boone was unable to demonstrate an essential element of his prima facie case of discrimination (namely, that he was treated differently than similarly situated employees outside of the protected class). *See id.* at 12. Following the prior ruling in this District, only Boone's claim challenging the Board's decision upholding his termination remains. *See generally* [R. 39, p. 1] ("In August 2022, the Court found that Plaintiff failed to prove an essential element of his racial discrimination claim and granted Defendant summary judgment. In this second part of Plaintiff's case, the AJ's decision is at issue.") (record citation omitted). To assist in resolving that claim, the Court set a deadline for the Secretary to file the administrative record and set a briefing schedule for the parties. *See* [R. 27].

The administrative record was filed on September 27, 2022. *See* [R. 26]. Following some delay and motions practice, *see, e.g.*, [R. 37], the parties' briefs in support of their positions regarding the Board's decision are ripe and presently before the Court. *See* [R. 38 (Boone's Brief in Support of Appeal)]; [R. 39, R. 40 (Secretary's Motion in Support of Affirming MSPB's

Decision/Response to Plaintiff's Appeal Brief)]; [R. 41 (Boone's Reply)]; [R. 42 (Agency's Reply)]. The matter stands submitted for review.

## II.    Legal Standard

Federal employees are protected from adverse employment decisions by the CSRA. *See* 5 U.S.C. § 1101 *et seq.* The CSRA provides procedural protections for certain adverse employment decisions, and, in certain situations, the affected employee has a right to appeal the decision to the Board. *See Mroz v. Whitley*, No. 3:17-CV-647-CHB, 2021 WL 6882223, at *2 (W.D. Ky. Mar. 26, 2021) (citing *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012); 5 U.S.C. §§ 7512, 7513(d)). "If an employee alleges that the adverse decision was both serious enough to appeal to the MSPB *and* based on discrimination, he alleges a 'mixed case' and may further appeal to federal district court." *Id.* (quoting *Kloeckner*, 568 U.S. at 44 (quotations omitted); citing 29 C.F.R. § 1614.302) (cleaned up). As discussed above, that is what Boone has done in this case.

Boone's remaining claim challenges the Board's decision affirming his termination. In reviewing that claim, the Court may only set aside the Board's decision if that decision is found to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Carrethers v. Esper*, No. 3:16-CV-62-CRS, 2019 WL 2330894, at *5 (W.D. Ky. May 31, 2019), *aff'd sub nom. Carrethers v. McCarthy*, 817 F. App'x 88 (6th Cir. 2020) (quoting 5 U.S.C. §§ 7703(c)(1)–(3)) ("The non-discrimination portion is reviewed on the administrative record an[d] may be set aside only if found to be '(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.'"). In this context, substantial evidence is "more than a

mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Carrethers*, 2019 WL 2330894, at *5 (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *see also Brooks v. Dep't of the Treasury*, No. 2023-1788, 2024 WL 89388, at *2 (Fed. Cir. Jan. 9, 2024) (per curiam) ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks omitted).[6]

The Supreme Court has described the arbitrary and capricious standard as "extremely narrow" and has explained that it "allows the Board wide latitude in fulfilling its obligation to review agency disciplinary actions." *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 6–7 (2001). Indeed, the Supreme Court has found that it is not for the court "to substitute its own judgment for that of the Board," rather "[t]he role of judicial review is only to ascertain if the Board has met the minimum standards set forth in the statute." *Id.* at 7. Importantly, "[t]he petitioner bears the burden of establishing error in the Board's decision." *Erb*, 2024 WL 1110340, at *3 (internal quotation marks omitted).

## III. Analysis

In this action, Boone "challenges the Board's decision under the first and third standards of review." *See* [R. 38, p. 2]. Thus, Boone argues that the Board's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or was "unsupported by substantial evidence." *See* 5 U.S.C. § 7703(c). Boone specifically challenges the Board's decision on three grounds. First, he argues that the Board applied the wrong legal standard in its

---

[6] "If an employee asserts rights under the CSRA only, MSPB decisions . . . are subject to judicial review exclusively in the Federal Circuit." *Perry*, 582 U.S. at 422. Thus, Federal Circuit decisions are instructive for considering Boone's arguments that the Board erred in affirming his termination. *Cf. id.* at 437 ("The Federal Circuit is the proper review forum when the MSPB disposes of complaints arising solely under the CSRA.").

analysis regarding whether his actions constituted sexual harassment under Title VII.  *See* [R. 38, pp. 2–3].  Second, he argues that the doctrine of laches supports his position that the charges against him were stale or unfair.  *See id.* at 3–8.  Third, he argues that the penalty of termination was overly harsh and not in accordance with the law.  *See id.* at 8–11.  The Court will consider each argument in turn.

> ### a.  Incorrect Legal Standard Argument

Boone first argues that the Board, through the AJ's decision, applied the incorrect legal standard when determining whether his actions constituted sexual harassment under Title VII.  *See* [R. 38, pp. 2–3].  As a preliminary matter, this argument is wholly underdeveloped, consisting of barely four perfunctory and conclusory paragraphs.  *See id.*  To be sure, Boone has made no effort to explain *how* the AJ applied the incorrect legal standard.  *See id.*; *see also* [R. 41].  Such insufficient argumentation is reason enough for the Court to reject Boone's first challenge to the MSPB decision.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (cleaned up).

Further, the Court is a bit perplexed by this argument given that Boone and DeCA stipulated that Title VII was "the applicable standard to the charge in this case."  *See* [AR, p. 823].  Indeed, the AJ *explicitly* noted that she was applying the Title VII standard to which the parties had stipulated.  *See id.* ("The parties have stipulated that the Title VII standard for 'sexual harassment' is the applicable standard to the charge in this case.").

The AJ then looked to DeCA's policy statement, which defines unlawful harassment as:

unwelcome  conduct  that  is  based  on  characteristics  protected  by  Equal Employment Opportunity (EEO) laws including race, color, religion, sex (including

> pregnancy), national origin, age (40 or older), disability or genetic information.
> Harassment becomes unlawful where 1) enduring the offensive conduct becomes a
> condition of continued employment, or 2) the conduct is severe or pervasive enough
> to create a work environment that a reasonable person would consider intimidating,
> hostile, or abusive.

*Id.* And the AJ observed that the policy's language was substantially similar to the regulatory

definition of sexual harassment under Title VII:

> Unwelcome sexual advances, requests for sexual favors, and other verbal or
> physical conduct of a sexual nature constitute sexual harassment when (1)
> submission to such conduct is made either explicitly or implicitly a term or
> condition of an individual's employment, (2) submission to or rejection of such
> conduct by an individual is used as the basis for employment decisions affecting
> such individual, or (3) such conduct has the purpose or effect of unreasonably
> interfering with an individual's work performance or creating an intimidating,
> hostile, or offensive working environment.

*Id.* at 823–24 (quoting 29 C.F.R. § 1604.11(a)).  Notably, Boone argues that the Board should have

applied that same regulation in his present briefing.  *See* [R. 38, p. 2] (referencing 29 C.F.R. §

1604.11).  Thus, the Board not only employed the standard Boone had stipulated to in the

administrative proceedings, but it also applied the standard Boone now argues on appeal.  In such

a posture, the Court is unable to understand Boone's argument that the standard the Board

employed was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

the law.

Instead, as the Secretary observes, Boone's argument that the Board applied the incorrect

legal standard is (generously) construed as disagreement with the AJ's conclusion that his conduct

created a hostile work environment in violation of Title VII.  *See* [R. 39, p. 4] ("Plaintiff argues

that 'MSPB Applied Wrong Legal Standard,' but what he contends is that he disagrees with the

AJ's conclusion that Plaintiff's conduct created a hostile work environment in violation of Title

VII.").  But the fact Boone disagrees with the conclusions the Board reached regarding the

impropriety of his actions provides no grounds for the Court to set aside that decision unless such

conclusions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, or were unsupported by the evidence.  On this record, they were not.

For example, Boone argues that "[t]hree of the four accusers in this case described isolated incidents not rising to the level of actionable harassment or creation of a hostile work environment" and that "[t]he fourth accusers described years' old stale conduct that occurred so far in the past that no reasonable person could defend themselves against such stale accusations."  [R. 38, p. 2].  But these barebones arguments essentially ask the Court to reweigh the credibility of the individuals whose allegations appeared in the record, which the AJ thoroughly considered.

The Court will not disturb the credibility determinations of the Board on this record; indeed, "[c]redibility determinations are within the discretion of the Board and, 'in general, such evaluations are virtually unreviewable on appeal.'" *Mroz*, 2021 WL 6882223, at *4 (quoting *Bruce v. Dep't of Veterans Affs.*, 307 F. App'x 442, 445 (Fed. Cir. 2009)); *see also Erb*, 2024 WL 1110340, at *3 (same); *Terry v. Dep't of Agric.*, 856 F. App'x 283, 287 (Fed. Cir. 2021) (same).  Boone only "insists that his version of events is the correct one and the AJ got it wrong," but "he provides no reasons for this Court to reject the AJ's credibility determination and nothing in the record or in the AJ's decision indicates that the AJ's decision was arbitrary or capricious."  *See Mroz*, 2021 WL 6882223, at *4; *see also Erb*, 2024 WL 1110340, at *3 ("The Board also repeatedly compared Mr. Erb's specific version of events with contrary evidence of record and found his version of events to not be credible.  Mr. Erb has failed to show how the Board's credibility determinations were arbitrary.").  He thus has provided no basis for the Court to assign error to the Board's decision in this regard.

One wrinkle is worth noting here.  In the Board's decision, the AJ found the specifications involving Cooksey and Pezzella-Hopping (Specifications 1, 2, 6, and 7) supported the finding that

Boone had violated DeCA's policy against sexual harassment.  [AR, pp. 825–29, 832–36].  In his reply brief, Boone challenges the AJ's reliance on the incidents involving Cooksey because DeCA had separately determined, in the context of Cooksey's EEO complaint, that such sexual harassment did not occur.[7]  *See* [R. 41]; *see also* [AR, pp. 552–68] (Cooksey's EEO decision).  The AJ specifically referenced this inconsistency:

> The agency's final decision found that Cooksey did not meet her burden of proving her complaint of sexual harassment.  Appellant argues that the agency's final decision directly contradicts the agency's support of the first two specifications in the removal action.  Appellant has offered no evidence that the decision became final and binding on the agency or the Board.  Although I am not bound by the agency's findings in the EEO matter, I am troubled that the agency has taken a contradictory position in the EEOC case, denying that Appellant's conduct constituted sexual harassment of Cooksey, while at the same time attempting to hold him accountable for sexual harassment for the very same conduct in this appeal.

[AR, pp. 826–27 n.5] (internal citations omitted).  Still, the AJ found the conduct constituted sexual harassment and supported the charge against Boone.  *See id.* at 829.

Notably, Boone has provided no case law to demonstrate that such action by the AJ was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, or was unsupported by substantial evidence; indeed, his reply brief contains not a single case citation.  *See* [R. 41].  Moreover, Boone's argument lacks any merit, as the Court observes that the AJ explicitly considered the credibility of Cooksey and Boone (determinations that, as discussed above, are virtually unreviewable on appeal), thoroughly detailed the factual record, and discussed facts that corroborated Cooksey's claims; ultimately, the AJ found that, although the evidence was "very close," Boone more likely than not engaged in the conduct Cooksey had described, and the AJ further found such conduct created a hostile or abusive work environment.  *See* [AR, pp. 825–29].

---

[7] Boone does not make any explicit arguments regarding the AJ's findings involving Pezzella-Hopping.  Instead, he only refers to Pezzella-Hopping by name when arguing his laches defense.  *See* [R. 38, pp. 5–7].

Given the thorough consideration by the AJ to the record and to the governing standard, the Court finds Boone has provided no reason for the Court to set aside the Board's decision to rely on the Cooksey incidents as being arbitrary or capricious or unsupported by substantial evidence.

But even if the AJ's reliance upon the Cooksey incidents was improper, the charge against Boone would still be sustained by virtue of the Pezzella-Hopping incidents. In other words, proof of one specification was enough for the Board to have sustained the charge against Boone; thus, the specifications involving Pezzella-Hopping still support the charge against him. *See Burroughs v. Dep't of Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (discussing the "situation where more than one event or factual specification is set out to support a single charge" and explaining, "[i]n that case, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge"); *see also Brooks*, 2024 WL 89388, at *6 (citing *Burroughs*, 918 F.2d at 172) ("And in any event, any potential Board error related to the 2007 casualty-loss deduction would not affect the outcome of this appeal. '[W]here more than one event or factual specification is set out to support a single charge . . ., proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge.'").

In this way, the AJ's reliance on the Cooksey incidents does not affect her separate findings that the charge against Boone was supported by the Pezzella-Hopping incidents. And because Boone (as discussed above) has not shown that the AJ's reliance on the conduct against Pezzella-Hopping was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, or was unsupported by substantial evidence—indeed, he has not even argued the point—the Court affirms the Board's decision.

### b. Laches Argument

Boone next argues the defense of laches.  *See* [R. 38, pp. 3–8].  Here, he essentially argues that DeCA waited too long from when the allegations against him came to light to when it terminated his employment.  *See id.* at 6 ("Rather than timely act on these claims, the agency waited from July 2019 until November 2020 (16 months) before proposing appellant's removal[.]").  Laches is an equitable defense, which consists of two elements: "(1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party."  *See Brown-Graves Co. v. Cent. States, Se. & Sw. Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000); *Sleevi v. Merit Sys. Prot. Bd.*, No. 2021-1447, 2021 WL 2879045, at *1 (Fed. Cir. July 9, 2021) ("To establish the defense of laches, the party claiming laches must show that (1) there was unreasonable and inexcusable delay in bringing the appeal that (2) materially prejudiced or injured it."); *see also Cornetta v. United States*, 851 F.2d 1372, 1378 (Fed. Cir. 1988) (discussing the two types of prejudice: defense and economic).  The Court reviews the Board's application of the doctrine of laches for an abuse of discretion.  *See Sleevi*, 2021 WL 2879045, at *1; *see also Howard v. Dep't of Air Force*, 680 F. App'x 961, 969 n.2 (Fed. Cir. 2017) (per curiam) (same).

Boone argued laches during the administrative proceedings, and the AJ rejected his assertion of the defense, finding:

> Appellant has not met his burden of showing that the agency inexcusably or unreasonably delayed initiating the removal action.  Further, he has not shown that his defense was materially or substantially impaired by the loss of Garcia or the internal security footage.  Accordingly, he has not proven his defense of laches.

[AR, p. 841].  In the present action, rather than presenting any new argumentation or discussion of how the Board's decision was an abuse of discretion or was unsupported by substantial evidence, Boone has simply copied and pasted the arguments he made in a filing before the Board into his brief in this matter.  *Compare id.* at 425–28, *with* [R. 38, pp. 3–11].  Boone's failure to address or wrestle with the appropriate standard that governs his present action before this Court

is reason enough for the Court to grant the Secretary's motion for summary judgment.  *Cf.* *McPherson*, 125 F.3d at 995–96; *Howard v. Locke*, 729 F. Supp. 2d 85, 87 (D.D.C. 2010) (granting defendant's motion for summary judgment in appeal of MSPB decision where "plaintiff's opposition utterly fail[ed] to address both the facts set forth in the defendant's statement of undisputed material facts and the arguments for summary judgment made in defendant's opening brief" and instead "continue[d] the same misguided approach she adopted in drafting her complaint, i.e., copying and pasting allegations and assertions irrelevant to her current claim, which concerns her termination from the Agency").

Even so, the AJ's determinations relating to Boone's defense of laches—that the agency's delay was not unreasonable in length and that Boone was not prejudiced by the delay—were not an abuse of discretion and were supported by substantial evidence.  First, concerning timing, the delay from when allegations against Boone first came to light to when he was terminated, *see* [R. 38, pp. 6–7] (alleging delay of sixteen months from Cooksey's allegations in July 2019 to termination in November 2020, and three-year-plus delay in Pezzella-Hopping coming forward); [R. 39, p. 3] (alleging delay of seventeen months), is well within the amount of time that courts have found reasonable.  *See Howard*, 680 F. App'x at 969 n.2 ("We have previously held that a delay of more than three years between the conduct in question and the removal complaint was not unreasonable."); *Terry*, 856 F. App'x at 288 (three-year delay not unreasonable).

Second, although Boone argues that the delay led to certain evidence being destroyed and that the death of a "critical witness" (who Boone alleges was involved in a concerted effort against him) and "long past events" prevent him from being able to present a defense in this matter, the AJ considered *these exact arguments* in the context of Boone's laches defense and found he had not been prejudiced by the delay.  *See* [AR, pp. 837–41].  To be sure, the AJ provided an overview

of the timeline in Boone's case and then found Boone's arguments regarding prejudice, *i.e.*, that certain videos or records had been lost and that the witness's death hindered his ability to defend the charges, to be meritless.  *See id.* at 840–41.  Boone has provided no argument on how that determination was an abuse of discretion or was unsupported by substantial evidence.

The Federal Circuit's decision in *Terry* is instructive for the Court's consideration of Boone's laches argument.  There, the Federal Circuit considered an AJ's decision that, although the AJ was "troubled by the delay" of three years, the agency had "adequately addressed the delay." *See Terry*, 856 F. App'x at 288.  The AJ in that case had also found the appellant's arguments that he had been prejudiced by the delay, because of memory issues from his time in military service, unpersuasive.  *See id.*  Upon review, the Federal Circuit affirmed the decision of the Board and found the plaintiff's arguments that the delay was so lengthy as to prejudice him unconvincing. *See id.*

Similarly, here, Boone has not shown the agency's delay in bringing charges against him prejudiced his ability to defend this action.  *See id.*; *see also Howard*, 680 F. App'x at 969 n.2 ("The AJ disagreed that the delay barred the charge, noting that the Air Force initiated removal proceedings promptly after upper management became aware of Ms. Schneider's allegations, and also found that Mr. Howard was not prejudiced by the delay. . . . We detect no abuse of discretion in the Board's conclusion that a three-year delay here was unreasonable or prejudicial.") (internal citation omitted).  After review of the full record and the AJ's decision, the Court concludes that the Board did not abuse its discretion in finding laches inapplicable.

### c.  Penalty Argument

Finally, Boone argues that the penalty against him was overly harsh and not in accordance with the law.  *See* [R. 38, pp. 8–11].  Again, rather than addressing how the Board's decision was

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, or was unsupported by substantial evidence, Boone has simply copied and pasted the arguments he made in his prehearing brief to the Board into his brief before this Court.  *Compare* [AR, pp. 543–44], *with* [R. 38, pp. 8–11].  Such cursory treatment of Boone's position, without any citations to case law or developed reasoning regarding how the Board erred, is once again reason enough for the Court to grant summary judgment to the Secretary.  *Cf. McPherson*, 125 F.3d at 995–96; *Locke*, 729 F. Supp. 2d at 87.

But again, even construing Boone's brief as particularly challenging the Board's decision regarding his penalty, his position fails.  "It is well-established that selecting the penalty for employee misconduct is left to the agency's discretion," and a court "will not disturb the agency's choice unless the severity of its action appears totally unwarranted in light of the relevant factors."  *Erb*, 2024 WL 1110340, at *5 (internal quotation marks omitted); *see also Douglas*, 5 M.S.P.R. at 306 ("[T]he Board's review of an agency-imposed penalty is essentially to assure that the agency did conscientiously consider the relevant factors and did strike a responsible balance within tolerable limits of reasonableness.  Only if the Board finds that the agency failed to weigh the relevant factors, or that the agency's judgment clearly exceeded the limits of reasonableness, is it appropriate for the Board then to specify how the agency's decision should be corrected to bring the penalty within the parameters of reasonableness.").

In his brief, Boone recognizes that the Board must review a penalty for reasonableness.  *See* [R. 38, p. 8].  And he represents that "the Board should conduct its own penalty determination in this case."  *Id.* at 10.  But a review of the AJ's decision in this action demonstrates *that the AJ did exactly that in this case.*

To be sure, the AJ considered the same arguments Boone raises here regarding his penalty and determined "the agency's decision to remove the appellant did not exceed the tolerable limits of reasonableness." [AR, p. 848]. Indeed, the AJ engaged in a detailed discussion of the factors the agency (*i.e.*, Yoder) considered in determining removal was the proper penalty for Boone. *See id.* at 845–48. Through that discussion, the AJ considered Boone's arguments that Yoder did not consider Boone's history of service, that Yoder incorrectly referenced "negligence" on Boone's behalf, and that Yoder improperly weighed the "notoriety" of Boone's conduct, before ultimately concluding that Boone's penalty was within the bounds of reasonableness. *See id.* Nothing Boone has argued in the present action (again, he has presented no new arguments) provides any grounds on which the Court can find that the Board's decision regarding Boone's penalty was arbitrary, capricious, an abuse of discretion, or not in accordance with the law, or was unsupported by substantial evidence.

In this way, this case is like *Erb*, where the Federal Circuit found no abuse of discretion in the Board's decision to affirm an agency's penalty, where in its removal decision, the agency "expressly referred to the twelve *Douglas* factors, noted that certain *Douglas* factors were inapplicable or neutral, and analyzed each relevant and aggravating factor to determine that removal was the appropriate penalty," and where the Board acknowledged the detailed analysis the agency had undertaken in deciding to remove the employee. *See Erb*, 2024 WL 1110340, at *5. Like the decision reviewed in *Erb*, in this action, DeCA detailed the *Douglas* factors supporting Boone's termination, *see* [AR, pp. 301–03], and the Board thoroughly considered DeCA's analysis and Boone's arguments against the penalty and ultimately concluded the penalty was reasonable, *see id.* at 845–48. Boone has not shown the Board's decision to be an abuse of

discretion, and the Court is "unpersuaded that removal was an unreasonable penalty." *See Erb*, 2024 WL 1110340, at *5.

**IV.    Conclusion**

For the foregoing reasons, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. The Secretary's Motion in Support of Affirming the MSPB's Decision **[R. 39]** is **GRANTED**.

2. A separate judgment shall issue.

This the 19th day of March, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY